[No. AO23421. First Dist., Div. Five. Mar. 16, 1984.]

In re the Marriage of PATRICIA JESSE and HENRY D. NEAL.
PATRICIA JESSE NEAL, Respondent, v.
HENRY D. NEAL, Appellant.

**COUNSEL**

David S. Maguire and Germino, Layne, Brodie, Runte, Maguire & MacKay for Appellant.

James T. Danaher, Danaher & Klynn and Richard Such for Respondent.

**OPINION**

**KING, J.—** In this case we hold that a residence owned by a putative spouse prior to marriage is her separate property, but is presumed to be the community property of the parties when, during the marriage, she places title to the property in joint tenancy with her spouse. This presumption cannot be rebutted by an oral agreement between the parties that the property is to remain her separate property. Thus, adding a spouse's name in joint tenancy to title of premarital separate property causes it to become

"property acquired by the parties during marriage in joint tenancy form" pursuant to Civil Code section 4800.1. ■■■ We further hold, for purposes of tracing and valuing the separate property contribution of the transferring spouse which must be reimbursed pursuant to Civil Code section 4800.2, that value is fixed by determining the value of her separate property interest as of the date of the property's conversion into joint tenancy, absent any other separate property "contributions to the acquisition of the property" as defined in Civil Code section 4800.2.

When Patricia Jesse Neal and Henry D. Neal were married on July 1, 1976, unbeknownst to Patricia, Henry was already married. In a judgment annulling the marriage on this ground, the court confirmed certain assets to Patricia as her separate property, finding there was an oral agreement between the parties that although title to Patricia's separate property was placed in joint tenancy with Henry, it was to remain her separate property. At the time of the trial court's decision, the controlling law had been provided by our Supreme Court's decision in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285] [acquisition of residence in joint tenancy during marriage raises presumption of community property in absence of agreement or understanding to the contrary]. Subsequently, in part to overturn the holding in *Lucas,* Assembly Bill No. 26 was enacted. Because this legislation is applicable to this case,[1] we reverse the judgment in part and affirm it in part.

At the time of the marriage Patricia owned a house in Redwood City. It was undisputably her separate property. In 1980 the house was refinanced to obtain a $90,000 loan. The lender required Patricia to transfer title to herself and Henry as joint tenants. Both parties' incomes were stated on the loan application. From the proceeds of the loan a $21,500 down payment was made on a house in Fremont, title to which was also taken in joint tenancy, $10,000 was used to buy a Lincoln automobile, furniture was purchased for the Redwood City house, and other payments were made not pertinent to the present appeal.

Patricia testified that she and Henry had orally agreed when they married that, "His assets were for his kids. My assets were for my kids." She testified that the Fremont home was purchased so that both her children would have houses: "we had discussed the fact that the kids would never be able— my children would never be able to buy houses in the Bay Area and to

---

[1]See 1983 Statutes, chapter 342, section 4 (Civ. Code, § 4800.1 applies to "proceedings commenced before January 1, 1984, to the extent proceedings as to the division of the property are not yet final on January 1, 1984"). See also, Report of Senate Committee on Judiciary on Assembly Bill No. 26, July 14, 1983, 83 Senate Journal, 1983 Regular Session, pages 4865, 4867, attached as an appendix to this opinion.

proceed with that and that way each one of them would have a house and they could take over the loan payments eventually." She also testified that, "the original intent of the thing was to buy a house for each one of those kids and they were my kids, because they could not afford to get anything in this day and age," that "[i]t was understood that it was for the children," and that the parties had discussed signing the Fremont deed over the Patricia's children when the children became of age. Patricia's brother testified that in a 1976 conversation at which Henry was present, "the conversation came out" that Henry's assets "would be left for the children and Pat also said that her home was for her children and herself."

The parties separated in August 1981. On July 15, 1982, Patricia filed a petition for nullity of marriage. The court determined that the Redwood City house was Patricia's separate property, declaring in a statement of decision that "there was an oral agreement that this property be retained as petitioner's separate property, and the joint tenancy deed was created solely for the purpose of refinancing the property." The court also found that the Lincoln automobile and the furniture acquired during the marriage, having been purchased with the proceeds of the loan, were Patricia's separate property. Finally, the court found the Fremont house to be quasi-marital property,[2] but ordered Henry to execute a note and deed of trust in favor of Patricia in the amount of $21,500, the amount of the loan proceeds from refinancing her Redwood City house which were used for the down payment on the Fremont house.[3]

■ Henry challenges the sufficiency of the evidence to support the court's determination that the parties intended the Redwood City house would remain Patricia's separate property. He argues that Civil Code section 4800.1[4] now governs this case[5] and requires a writing to rebut the presumption of community property where property is acquired during marriage in joint tenancy, and that the judgment here must be reversed for want of such a writing.[6]

---

[2]Quasi-marital property is property acquired during a marriage that is declared void or voidable when one or both of the parties believed in good faith that the marriage was valid. The division of such property is to be divided as if it were community property. (Civ. Code, § 4452.)

[3]The court also determined the character of other property not pertinent to this appeal.

[4]Except as otherwise stated, all code references are to the Civil Code.

[5]See footnote 1, *ante*.

[6]Civil Code section 4800.1 provides that the community property presumption "is a presumption affecting the burden of proof and *may be rebutted by either of the following*: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property." (Italics added.) The statute does not expressly state that the two enumerated methods

Section 4800.1, establishes a presumption that "property *acquired by the parties during marriage* in joint tenancy form is presumed to be community property." (Italics added.) The Redwood City house was acquired by Patricia as her separate property before the marriage, but a change in the form of title to joint tenancy with Henry took place during the marriage upon the insistence of the lending institution refinancing the property. Thus, the issue before us is whether section 4800.1 is applicable to the Redwood City house. A review of the legislative history of Assembly Bill No. 26 adopting section 4800.1 discloses that the bill as originally introduced upon the recommendation of the California Law Revision Commission[7] was applicable to joint tenancy property "wherever situated and whenever acquired," but as ultimately enacted the statute is applicable only to "property acquired by the parties during marriage in joint tenancy form."[8] If section 4800.1 applies to the Redwood City house, the holding in *Lucas* is inapplicable: *Lucas* dealt with the presumption deleted from section 5110 by Assembly Bill No. 26 that a single-family residence acquired in joint tenancy during marriage was presumed to be community property. ██ The Legislature in passing Assembly Bill No. 26 enacted sections 4800.1 and 4800.2 for the purpose of changing the rule in *Lucas*.[9]

Although the foregoing sequence of amendments could be construed as reflective of legislative intent that section 4800.1 not apply to separate property of one spouse owned prior to marriage which is placed in joint tenancy with the other spouse during the marriage, there is a direct declaration of

are the only ways to rebut the presumption. However, a report by the Assembly Committee on Judiciary states, "The presumption could not be rebutted by an alleged oral agreement or an implication from a statement of conduct, but only by a written agreement or evidence of title." (Assem. Com. on Judiciary Rep. on A.B. 26 (May 9, 1983) p. 3.) Additionally, as stated in the Report of the Senate Committee on the Judiciary on Assembly Bill No. 26 which was printed in the Senate Journal as evidence of legislative intent, a copy of which is attached as an appendix to this decision, "Assembly Bill No. 26 makes clear that the community property presumption may not be rebutted by an alleged oral agreement or an implication from a statement or conduct, but only by a written agreement." (83 Sen. J. (1983 Reg. Sess.) pp. 4865-4866.)

[7]See *Recommendation Relating to Division of Joint Tenancy and Tenancy in Common Property at Dissolution of Marriage* (Sept. 1982) 16 California Law Revision Commission Report (1982) page 2165.

[8]In Assembly Bill No. 26, 1983-1984 Regular Session, as originally introduced on December 6, 1982, Civil Code section 4800.1 was made applicable to "real and personal property, wherever situated and whenever acquired, held by the parties as joint tenants or tenants in common." The bill was amended by the Assembly on February 22, 1983, to make the statute applicable to "real and personal property, wherever situated, title to which is taken during marriage by the parties as joint tenants or tenants in common." This language was again amended in the Assembly on April 4, 1983, to make the statute applicable to "property acquired by the parties during marriage in joint tenancy form . . . ." The latter language was included in bill as enacted.

[9]16 California Law Revision Commission Reports (1982) page 2165; 83 Senate Journal (1983 Reg. Sess.) page 4866.

legislative intent to the contrary. As it passed the Assembly, Assembly Bill No. 26 provided that the presumption in section 4800.1 was applicable to property "acquired by the parties during marriage in joint tenancy form." It then passed the Senate with the same language. The Chairman of the Senate Judiciary Committee, when reporting on the bill on the floor of the Senate, moved that a revised report of the California Law Revision Commission Concerning Assembly Bill No. 26 be printed in the Senate Journal as evidence of legislative intent.[10] That report stated, in comments about section 4800.1 in its final form, "It also governs property initially acquired before marriage, the title to which is taken in joint tenancy form by the spouses during marriage. ■ ■ ■ ■ The measure of the separate property contribution under Section 4800.2, in such a case, is the value of the property at the time of its conversion to joint tenancy form." (83 Sen. J. (1983 Reg. Sess.) pp. 4865-4866.)[11]

■ We therefore conclude the change in the form of title of the Redwood City house caused a presumption to arise pursuant to section 4800.1 that Patricia made a gift of the house to the community, and this presumption was rebuttable only by a writing.[12] The Redwood City house, which

---

[10]A copy of this report is attached to this opinion as an appendix.

[11]The legislative intent is thus expressed to measure the separate property contribution for purposes of reimbursement under section 4800.2 as being the value of the property at the time of its conversion to joint tenancy form. Presumably what the Legislature really meant was that the amount to be reimbursed is the value of the separate property *equity* in the property at the time of conversion, that is, the fair market value of the property less outstanding encumbrances and less any community property contributions prior to its conversion which are found not to be a gift to the separate property. It is common, for example, for community funds to be expended on a separate property house of one of the parties in which they reside during the marriage. The record before us does not disclose whether community funds were used as "contributions to the acquisition of the property," as that term is now defined in section 4800.2, prior to its conversion to joint tenancy form. If they were, under the facts of this case, the trial court's finding of a *Lucas* agreement may result in a determination they were a gift of community funds to Patricia's separate property. Where there is no *Lucas* agreement, the community would acquire an interest in the separate property by such community contributions to the acquisition of the property. Under those circumstances, the *Moore* formula (*In re Marriage of Moore* (1980) 28 Cal.3d 366 [168 Cal.Rptr. 662, 618 P.2d 208]) as modified by *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426 [181 Cal.Rptr. 910] would have to be utilized to determine the separate property equity in the property at the time of conversion and this would be the measure of the traceable separate property to be reimbursed under section 4800.2. Further, since the date of separation, it is likely that Patricia has been using her separate property for contributions to the acquisition of the property as that term is used in section 4800.2. Whether these postseparation contributions are reimbursable under section 4800.2, are a basis for valuing the property at the date of separation, rather than the time of trial under section 4800, subdivision (a), are a basis for application of a reverse *Moore-Marsden* formula, or are simply considered as a nonreimbursable contribution to the community in exchange for her use of the house are questions not presently before us, however, trial and appellate courts will undoubtedly be called upon to answer them in the future.

[12]"Section 4800.1 requires a writing to rebut the community property presumption. This has the effect of limiting existing law which permits transmutations of property by oral

Patricia owned as her separate property prior to marriage, was thus converted into community property when it was placed into joint tenancy, even though placing it in joint tenancy was required by the lending institution refinancing the property. ■ Additionally, the measure of the value of Patricia's separate property contribution to be reimbursed to her pursuant to section 4800.2, is the value of the separate property equity in the property as of the date of its conversion into joint tenancy, to be increased by any other separate property "contributions to the acquisition of the property" as defined in section 4800.2.

■ Henry contends that the $90,000 obtained from refinancing Patricia's Redwood City house was a community asset because it was granted on the strength of both parties' earnings, so that the subsequently acquired property characterized by the court as Patricia's separate property (the down payment on the Fremont house, the Lincoln automobile, and the furniture) was actually quasi-marital property, and the $21,500 lien upon the Fremont house (representing Patricia's separate property contribution to the purchase of that house) should not have been imposed. This argument lacks merit: the security for the loan pursuant to a first deed of trust (the Redwood City house) was Patricia's separate property, and "funds procured by the hypothecation of separate property of a spouse are separate property of that spouse . . . ." (*Estate of Abdale* (1946) 28 Cal.2d 587, 592 [170 P.2d 918]; accord, *Ford* v. *Ford* (1969) 276 Cal.App.2d 9, 13 [80 Cal.Rptr. 435]; see also, *Bank of California* v. *Connolly* (1973) 36 Cal.App.3d 350, 355 [111 Cal.Rptr. 468].) There is substantial evidence to support the trial court's findings that the lender was relying upon the equity in Patricia's house as the source of security for the loan, rather than the income of the parties, and that pursuant to the oral agreement of the parties the proceeds were her separate property.

Since the funds resulting from the refinancing of Patricia's separate property were her separate property, the ruling of the trial judge finding the Fremont house to be quasi-marital was correct, pursuant to section 4800.1, since it was purchased in joint tenancy during marriage. The trial court was also correct in ruling that Patricia was entitled to a reimbursement of the $21,500 down payment on the Fremont house which came from the proceeds of the loan on her Redwood City property. This is consistent with section 4800.2.

With regard to the trial court's ruling awarding the furniture to Patricia as her separate property, these assets, not having being acquired during the

---

agreements and implications from unilateral statements of a party." (83 Sen. J. (1983 Reg. Sess.) p. 4866.) See also, footnote 6, *ante.*

marriage *in joint tenancy form,* are not presumed to be community property pursuant to section 4800.1. In enacting Assembly Bill No. 26, however, the Legislature amended section 5110, extending the general presumption that property acquired during a marriage is community property. However, either under the holding of *Lucas* or under section 4800.2 Patricia is entitled to the furniture as her separate property. Under *Lucas,* pursuant to the trial court's findings, there was an oral agreement between the parties that the furniture would remain her separate property. Alternatively, section 4800.2 would allow Patricia a right of reimbursement for traceable separate property contributions to the furniture without adjustment for any change in monetary values and not to exceed the net value of the property at the time of division. Presumably, as used furniture, it has a fair market value of less than the amount of the purchase price, therefore Patricia is entitled to the net value at the time of the division. The award of the furniture to Patricia accomplished this.

█ The record before us does not disclose how title to the Lincoln automobile was taken. Thus, we must remand the issue of the character of the Lincoln to the trial court for a determination of its registration.[13] If it is registered in the names of Patricia "or" Henry, it is deemed to be held in joint tenancy by operation of law pursuant to Vehicle Code sections 4150.5 and 5600.5. The section 4800.1 presumption of community property would then be applied, subject to Patricia's right of reimbursement for her traceable contributions to its purchase from her separate property proceeds from the refinancing. If the car is held in the names of Patricia "and" Henry, or in their names as community property or in tenancy in common, section 4800.1, being limited by its terms to joint tenancy property, would be inapplicable and the trial court's award of the Lincoln to Patricia as her separate property, pursuant to *Lucas,* would be affirmed for the same reasons discussed above in conjunction with the furniture. If the Lincoln is registered in Patricia's name alone, its award to Patricia would likewise be affirmed pursuant to *Lucas.*

Henry also claims that the court failed to make a necessary finding on the issue whether either or both parties entered the marriage in good or bad faith. (See Civ. Code, § 4452 [court shall declare spouse to be putative if

---

[13]In providing for reimbursement of separate property contributions to the acquisition of community property, section 4800.2 limits the amount reimbursed by providing it is to be without interest or adjustment for change in monetary values (presumably this means equity appreciation resulting from nonseparate property factors such as inflation) but, in any event, the amount to be reimbursed can be no greater than the net value of the property at the time the court divides it. Thus, the issue of determining the character of the Lincoln will be moot if its equity value at the time of division is $10,000 or less, since this is the amount of Patricia's separate property used to purchase it. If the car is worth $10,000 or less, the trial court's award of it to Patricia would be correct under section 4800.2.

it determines that marriage is void or voidable and "finds that either party or both parties believed in good faith that the marriage was valid"].) Henry argues that it cannot be inferred on appeal that the court decided this issue in favor of Patricia, since the court's statement of decision did not address the issue. But the record does not demonstrate that the omission was brought to the attention of the trial court at any time. In the absence of such a showing, it is to be inferred that the court decided in favor of Patricia on this issue. (Code Civ. Proc., § 634.)

The judgment is affirmed as to the award of furniture and the Fremont house to Patricia, but is reversed as to the Redwood City house, and the cause is remanded for retrial of the value of the community interest therein and the fixing of the amount of Patricia's reimbursement for her separate property contributions to that property. The judgment is also reversed as to the Lincoln automobile, and the cause is remanded for a determination of the registration of the Lincoln automobile and its award in accordance with the views expressed herein.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied April 11, 1984, and respondent's petition for a hearing by the Supreme Court was denied May 24, 1984. Bird, C. J., and Broussard, J., were of the opinion that the petition should be granted.

---

APPENDIX

July 14, 1983                    SENATE JOURNAL
                        MOTION TO PRINT IN JOURNAL
Senator Keene moved that the following reports be printed in the Journal.
  Motion carried.
            REPORT OF SENATE COMMITTEE ON JUDICIARY
                      ON ASSEMBLY BILL 26
  The Senate Committee on Judiciary has received the following report of the California Law Revision Commission concerning Assembly Bill 26. The report is preserved here as evidence of legislative intent.
                California Law Revision Commission
                Report Concerning Assembly Bill 26
  A continuing problem in California law is that married persons frequently take title to property in joint tenancy form even though the property is acquired with community funds and even though the married persons are unaware of the different legal consequences of joint tenancy and community property tenure. At dissolution of marriage, for example, the

court has no jurisdiction to divide joint tenancy property and therefore may be unable to make the most sensible disposition of all the assets of the parties. For instance, it may be desirable to award temporary occupancy of the family home to the spouse awarded custody of the minor children; this can be done if the property is community but not if it is joint tenancy. Moreover, because the joint tenancy property cannot be divided at dissolution, it will have to be subsequently partitioned in a separate civil action.

The Legislature addressed these problems directly in 1965 by adding to Civil Code Section 5110 a provision that a single-family residence acquired by the spouses during marriage is presumed to be community property for purposes of division at dissolution. The Section 5110 presumption has generally worked well and minimized the problems created by community property in joint tenancy form. However, as construed by the courts, the community property presumption may be rebutted by evidence of oral agreements between the parties and by implications from statements or conduct of the parties, notwithstanding the statute of frauds. Moreover, under the interpretation of *In re Marriage of Lucas,* 27 Cal.3d 808, 614 P.2d 285, 166 Cal.Rptr. 853 (1980), the presumption precludes a spouse who bought the property with separate funds from tracing and recovering the funds at dissolution—a gift is presumed. The *Lucas* holding has been extended by the courts to other types of community property in addition to property taken in joint tenancy form.

Assembly Bill 26 builds on the community property presumption of Section 5110. Under Assembly Bill 26 all property acquired by the spouses during marriage in joint tenancy form is presumed to be community for purposes of dissolution—not just the single-family residence. This is significant because, although the single-family residence is the major asset in many marriages, spouses frequently hold substantial amounts of their wealth in joint tenancy form, including bank accounts, stocks, and other real property. Assembly Bill 26 makes clear that the community property presumption may not be rebutted by an alleged oral agreement or an implication from a statement or conduct, but only by a written agreement. Finally, Assembly Bill 26 overrules the *Lucas* interpretation of the Section 5110 presumption and other community property presumptions by permitting a party to recover separate property contributions to the acquisition of the property; this is done through a reimbursement right at dissolution of marriage.

Assembly Bill 26 is jointly recommended by the California Law Revision Commission and the State Bar Conference of Delegates. It is a substantially revised version of the commission's *Recommendation Relating to Division of Joint Tenancy and Tenancy in Common Property at Dissolution of Marriage,* 16 Cal. L. Revision Comm'n Reports 2165 (1982). The revisions are designed to avoid tax and theoretical problems raised by practitioners concerning the original recommendation. Revised Comments to the bill are set out below.

*Civil Code § 4800.1 (added)*

*Comment.* Section 4800.1 reverses the common law presumption that property acquired by the spouses during marriage in joint tenancy form is joint tenancy property, and instead creates a presumption that the property is community property. This generalizes a provision formerly found in Section 5110 (single-family residence acquired in joint tenancy form presumed to be community property). The community property presumption created by Section 4800.1 is applicable in dissolution and legal separation proceedings only. It governs both real and personal property, whether situated in California or another jurisdiction, and includes property acquired during marriage while domiciled in another jurisdiction. It also governs property initially acquired before marriage, the title to which is taken in joint tenancy form by the spouses during marriage. The measure of the separate property contribution under Section 4800.2, in such a case, is the value of the property at the time of its conversion to joint tenancy form.

Section 4800.1 requires a writing to rebut the community property presumption. This has the effect of *limiting* existing law which permits transmutations of property by oral agreements and implications from unilateral statements of a party.

*Civil Code § 4800.2 (added)*

*Comment.* Section 4800.2 overrules the case of *In re Marriage of Lucas,* 27 Cal.3d 808, 614 P.2d 285, 166 Cal.Rptr. 853 (1980) (and cases following it), which precluded recognition of the separate property contribution of one of the parties to the acquisition of community property, unless the party could show an agreement between the spouses to the effect that the contribution was not intended to be a gift. Under Section 4800.2, a party making a

separate property contribution to the acquisition of the property is not presumed to have made a gift, unless it is shown that the parties agreed it was a gift, but is entitled to reimbursement for the separate property contribution at dissolution of marriage. The separate property contribution is measured by the value of the contribution at the time the contribution is made. Under this rule, if the property has since appreciated in value, the community is entitled to the appreciation. If the property has since depreciated in value, reimbursement may not exceed the value of the property; if both parties are entitled to reimbursement and the property has insufficient value to permit full reimbursement of both, reimbursement should be on a proportionate basis.

*Civil Code § 5110 (amended)*

*Comment.* Section 5110 is amended to delete the provision relating to classification for the purpose of dissolution of a joint tenancy single-family residence acquired during marriage. This provision is generalized and clarified by Section 4800.1 (division of joint tenancy property). The reference to former Section 5109 is also corrected.

*SEC. 4. (uncodified)*

*Comment.* Section 4 is intended to make Civil Code Sections 4800.1 and 4800.2 applicable retroactively to the extent practical Under Section 4, the new law applies to proceedings pending on the operative date if the property division has not yet been adjudicated, if the adjudication is still subject to appellate review, or if the trial court has expressly reserved jurisdiction to make the adjudication. *Cf. In re Marriage of Brown,* 15 Cal.3d 838, 544 P.2d 561, 126 Cal.Rptr. 633 (1976) (retroactive application of change in law to proceedings not yet final).