[Civ. No. 53851. First Dist., Div. Two. Apr. 17, 1984.]

In re the Marriage of LINDA JO ASH and GORDON ANDERSON.
GORDON ANDERSON, Appellant, v.
LINDA JO ASH ANDERSON, Respondent.

574

**COUNSEL**

Donald K. Struckmann, Dowgialo & Wolf and Bernard N. Wolf for Appellant.

Alan H. Davidson , Daniel U. Smith and Jerome A. Blaha for Respondent.

**OPINION**

**SMITH, J.**—Appellant Gordon Anderson appeals from a judgment in the proceeding for dissolution and consolidated cases of *In re Marriage of Anderson* and *Anderson* v. *Anderson* (County of Alameda Superior Court Nos. H-64175-5 and H-66347-6). The facts pertinent to our decision are as follows.

Appellant Gordon Anderson and respondent Linda Jo Ash Anderson were married on July 30, 1978, and separated 14 months later on October 5, 1979. There were no children.

Prior to their marriage, appellant purchased his late mother's Hayward home at an estate sale, financing the purchase through a cash inheritance and two promissory notes. Title was taken solely in appellant's name, and appellant testified that he repeatedly refused to follow respondent's frequent requests to place her name on the title documents. Respondent, however, testified that prior to the estate sale she and appellant had decided to buy a house together and, despite the fact that she did not contribute to the down payment, she considered his purchase to be "our home." Payments on the promissory notes were made from a joint checking account.

In the spring of 1979, nine months after their marriage, respondent, who is a real estate agent, suggested that the parties obtain a home equity loan.

Appellant agreed based upon his concern for their deteriorating financial condition. They therefore applied for and received a $17,000 loan, part of which would be used to pay bills and the remainder to be placed in investments.

However, on the last day to close escrow on the loan, the title officer informed the parties that respondent would have to sign a release of any property interest that she possibly held in the house. Respondent refused to do so. Asking if anything else could be done, appellant was told that the loan could be transacted if he put respondent's name on the home's title. Appellant said, "Go ahead," and the title officer then prepared a joint tenancy deed which appellant signed.

At trial, appellant testified that he had no idea he was giving respondent a one-half interest in the house. Rather, he assumed that at most the new deed meant that respondent might share in any appreciation accruing on the house after the loan transaction. Appellant also testified that respondent had represented to him that she was knowledgeable of the loan process and that she would take care of his interests. Appellant did not learn of the effect of the joint tenancy deed until he consulted an attorney regarding dissolution proceedings, four months after the deed was executed.

The parties' marital status was subsequently resolved by a bifurcated interlocutory judgment of dissolution of marriage. It was then determined that the Hayward house was held in community property based upon appellant's conveyance during the home equity loan transaction. The trial court further found that respondent did not make any misrepresentations regarding the loan process and that appellant did not rely on any such representations in executing the grant deed.

## APPEAL

Appellant contests the trial court's determination that the Hayward home was community property.

While this case was pending on appeal, the single family residence presumption on which the trial court relied was deleted from Civil Code section 5110[1] and is now replaced by two new sections. New Civil Code section 4800.1 now provides that all property acquired by the parties during marriage in joint tenancy is presumed to be community property for the pur-

---

[1] Former section 5110 provided in part: "[w]hen a single-family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that such single family residence is the community property of said husband and wife."

poses of property division upon dissolution. This presumption is one affecting the burden of proof and may be rebutted by either a written agreement or a clear statement in the deed or in other documentary evidence that the acquired property is in fact separate property.[2] Additionally, new Civil Code section 4800.2 creates a right of reimbursement at the time of dissolution for any separate property contributions to an acquisition affected by section 4800.1, provided there is no written waiver.[3]

■ These new statutes apply to proceedings pending on January 1, 1984, if the property division at issue has not yet been adjudicated, if the adjudication is still subject to appellate review, or if the trial court has expressly reserved jurisdiction to make the adjudication. (Stats. 1983, ch. 342, p. —; — Sen. J. (1983 Reg. Sess.) p. 4867; see also *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) Since the present case falls within the second category above, we will apply the new legislation.

■ Appellant however contends that section 4800.1 does not govern the present fact situation because the Hayward home was not property "acquired by the parties during marriage in joint tenancy." (Civ. Code, § 4800.1) He points to the fact that he himself owned the house before marriage and cannot be deemed to have acquired the property thereafter. Appellant also contends that the word "acquire" means "purchase," and thus, the home was not acquired during the refinancing transaction after his marriage.

We disagree. Both the legislative intent and purpose behind the enactment of Civil Code section 4800.1 compel the conclusion that this section governs

---

[2]Section 4800.1 provides that: "For the purpose of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint tenancy form is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property."

[3]Section 4800.2 provides that: "[I]n the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division. As used in this section, 'contributions to the acquisition of the property' include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property."

the present case. The Senate Committee on Judiciary Report on Division of Marital Property (1983-1984 Reg. Sess.) (hereafter referred to as Marital Property Rep.) adopts the revised California Law Revision Commission Report on these new statutes as evidence of legislative intent and states that Civil Code section 4800.1 "governs property initially acquired before marriage, the title to which is taken in joint tenancy form by the spouses during marriage. The measure of the separate property contribution under Section 4800.2, in such a case, is the value of the property at the time of its conversion to joint tenancy form." (— Sen. J., *supra,* at p. 4866.)[4] Moreover, the legislative purpose behind section 4800.1 seeks to expand the domestic law court's jurisdiction over assets that spouses frequently hold in joint tenancy, thereby allowing "the most sensible disposition of the marital property." (Marital Property Rep., pp. 2, 4-5.) To adhere to appellant's restrictive interpretation of property affected by the new legislation would unduly impair the trial court's jurisdiction over marital assets.

We also note that the single family residence presumption under Civil Code section 5110, which was the basis for new section 4800.1 (see Marital Property Rep., p. 7) and similarly governed property "acquired by [husband and wife] during marriage as joint tenants," has been applied, without comment, to an analogous fact situation. In *In re Marriage of Johnson* (1983) 143 Cal.App.3d 57 [191 Cal.Rptr. 545], the section 5110 presumption was applied to a fishing boat which was owned by one spouse until title was transferred to husband and wife as joint tenants during marriage. (At p. 60.)

We also find the analysis in *In re Marriage of Miller* (1982) 133 Cal.App.3d 988 [184 Cal.Rptr. 408] to be particularly instructive on this point. In *Miller,* the court similarly faced the argument that the single family residence presumption did not apply because the house at issue was not "acquired" during marriage. The husband contended that although title to the home was taken by both spouses as joint tenants during marriage, he alone had contracted to purchase the house before marriage, and thus, the house was his separate property under the "inception of right" theory. That

---

[4]Section 4800.1 was originally introduced into the Assembly as applying to joint tenancy property "wherever situated and whenever acquired." (Assem. Bill No. 26 (1983-1984 Reg. Sess.) § 1, Dec. 6, 1982.) This phrase was later amended to "real and personal property, wherever situated, title to which is taken during marriage by the parties as joint tenants . . . ." (Assem. Amend. to Assem. Bill No. 26, *supra,* Feb. 22, 1983.) The final draft of the bill then reflected a third amendment making the statute applicable to "property acquired by the parties during marriage in joint tenancy form . . . ." (Assem. Amend. to Assem. Bill No. 26, *supra,* Apr. 4, 1983.) Although many inferences may be drawn from these changes, we find that the Marital Property Report, preserved on July 14, 1983—after the final amendments—"as evidence of legislative intent," comprises the most definitive and accurate statement of intent under section 4800.1.

theory determines the character of community or separate property on the purchaser's marital status at the time of the inception of the right (e.g., equitable title) by which formal title is ultimately taken. (*Id.,* at pp. 990-991.) Rejecting this argument, the court held that cases espousing the inception of right theory are inapposite where there is an affirmative act specifying a form of ownership in a conveyance of title during marriage. Specifically, "the special community property presumption of [former] Civil Code section 5110 *arises purely from the form in which title is taken.* The time of contracting is irrelevant. Here title was taken in joint tenancy after marriage. The property was thus presumptively community." (*Id.,* at p. 992; Italics added.)

▌ We also conclude that the presumption under Civil Code section 4800.1 similarly arises upon the conveyance of title to both spouses in joint tenancy form during marriage despite the fact that the property at issue may have been owned by one spouse before marriage. It is the express designation of a form of ownership in a transfer of title during marriage that invokes this presumption.

▌ We reject appellant's contention that the word "acquire" means "purchase." The Family Law Act (Civ. Code, §§ 4000-5174) not only defines acquisitions by "purchase" but also "by gift, bequest, devise or descent." (See Civ. Code, §§ 5107, 5108, 5110.) The act therefore acknowledges that an acquisition may be made by various forms of transactions and is not limited to a mere buy-sell arrangement.

We also reject appellant's contention that under *In re Marriage of Mahone* (1981) 123 Cal.App.3d 17 [176 Cal.Rptr. 274], the special community property presumption does not apply where one spouse executes a joint tenancy deed for the sole purpose of obtaining a home equity loan. In *Mahone,* the presumption arising from the form of joint tenancy title was effectively rebutted by an inference of an agreement between the spouses during refinancing transactions that the investment properties at issue were to remain the wife's separate property. (*Id.,* at pp. 22-24.) Assuming arguendo that this rule is applicable to the particular case, despite the burden of proof annunciated in new section 4800.1, there is no evidence of an agreement between appellant and respondent that appellant would retain a separate property interest.

Appellant finally contends that he may rebut the community property presumption under section 4800.1 by showing that the community had a mere de minimus interest or "dry legal title" because the new statute does not expressly limit the type of evidence necessary to rebut the presumption to that evidence specifically enumerated in the statute.

This contention is patently without merit. ▮▮ The presumption under section 4800.1 cannot be rebutted by an alleged oral agreement or an implication from a statement of conduct, *"but only* by a written agreement or evidence of title." (Assem. Com. Staff Rep. on Judiciary on Assem. Bill 26 (May 9, 1983) as amended April 4, 1983, p. 3; italics added.)

▮▮ We therefore conclude that Civil Code section 4800.1 applies to the present case and that the Hayward home is presumptively community property. Since there is no evidence of a written agreement or clear statement in documentary evidence otherwise, the presumption is conclusive. We must then determine what rights, if any, appellant has regarding reimbursement under Civil Code section 4800.2.

▮▮ On this latter issue, respondent contends that the grant deed itself must constitute a written waiver of reimbursement rights under section 4800.2 when a spouse transmutes his or her separate property into community property without an express reservation of a separate property interest in the grant deed. Respondent asserts that an award of reimbursement under these circumstances would render the grant deed illusory and violate Civil Code section 5103, which provides full force and effect to property transactions between the spouses.[5]

This argument must fail. There is no finding that appellant transmuted his Hayward home into community property, and respondent erroneously assumes that the present case reflects the situation where one spouse has given his or her separate property to the community as a gift. There is no evidence here that appellant intended to give respondent a one-half share of the Hayward home, and under section 4800.2, we may not presume such an intention. (See — Sen. J., *supra,* at p. 4866; Marital Property Rep., p. 6.)

▮▮ Respondent also contends that appellant's conveyance of the Hayward home does not constitute a separate property contribution under section 4800.2 because that section exclusively defines a "contribution to the acquisition of the property" to "include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property."

We disagree. The term "includes" is "ordinarily a word of enlargement and not of limitation. [Citation.] The statutory definition of a thing as 'in-

---

[5]Section 5103 provides in part that: "Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried . . . ."

cluding' certain things does not necessarily place thereon a meaning limited to the inclusions." (*People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 639 [268 P.2d 723]; *Paramount Gen. Hosp. Co.* v. *National Medical Enterprises, Inc.* (1974) 42 Cal.App.3d 496, 501 [117 Cal.Rptr. 42]; *Koenig* v. *Johnson* (1945) 71 Cal.App.2d 739, 747 [163 P.2d 746].) We are therefore not limited to the forms of contributions enumerated in the new section.

■ Moreover, section 4800.2 seeks to avoid the inequity incurred under the rule of *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285], which often required the equal division of property taken in joint tenancy form despite a showing that one spouse had contributed a substantial portion of his or her separate property. (See Assem. Com. Staff Rep. on Judiciary on Assem. Bill 26, *supra,* p. 4; Marital Property Rep., at p. 6.) Here, there is a sufficient showing that appellant made a substantial contribution to the community when he unwittingly executed a joint tenancy deed to a home that had been in his family for the last 25 years, at the insistence of a loan officer as a last minute requirement for a home equity loan. These facts clearly present a situation in which the Legislature sought to provide relief through the enactment of section 4800.2.

For the foregoing reasons, we conclude that the Hayward home is presumptively community property but that appellant is entitled to reimbursement for his separate property contributions under Civil Code section 4800.2. As there are no findings and little evidence as to the value of appellant's separate property contribution, we must remand the cause to the trial court with instructions to determine the amount of such an award.[6] We note that this award should constitute "the value of the property at the time of its conversion to joint tenancy form." (— Sen. J., *supra,* at p. 4866.) Under the facts in this case, that value must also discount any community interest incurred under *In re Marriage of Moore* (1980) 28 Cal.3d 366, 373-374 [168 Cal.Rptr. 662, 618 P.2d 208], based upon community payments made during the parties' marriage on the home's first mortgage prior to the conveyance during the home equity loan transaction.[7]

---

[6]Respondent also requests a new appraisal of the Hayward home upon remand of this case to the trial court. Civil Code section 4800 requires an evaluation of assets *"as near as practicable to the time of trial . . . ."* (Italics added.) In *In re Marriage of Hayden* (1981) 124 Cal.App.3d 72, 79-80 [177 Cal.Rptr. 183], a reassessment of the disputed property was ordered upon remand after appeal in order to prevent an inequity caused by the unfair conduct of the parties. There is no evidence in the present case which necessitates a similar result. (See *In re Marriage of Priddis* (1982) 132 Cal.App.3d 349, 358, fn. 2 [183 Cal.Rptr. 37].)

[7]Because we must reverse the lower court's decision on the above-stated ground, we need not address appellant's other argument that respondent breached her fiduciary duty during the loan transaction. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 223, pp. 4212-4213.)

## DISPOSITION

The judgment is reversed only as to the order that appellant pay respondent a one-half share of the value of the Hayward home. The cause is remanded to the trial court with instructions to determine the amount of appellant's separate property contributions under Civil Code section 4800.2.

Rouse, Acting P. J., and Miller, J., concurred.

A petition for a rehearing was denied May 17, 1984, and respondent's petition for a hearing by the Supreme Court was denied June 27, 1984.