[No. B150606. Second Dist., Div. Six. July 22, 2002.]

In re the Marriage of JEANNE and MARVIN W. CARPENTER.
JEANNE CARPENTER, Appellant, v.
MARVIN W. CARPENTER, Respondent.

**COUNSEL**

Misho, Kirker & Pina and Vanessa Kirker for Appellant.

John F. Hodges for Respondent

**OPINION**

**YEGAN, J.**—Jeanne Carpenter (wife) appeals from a marital dissolution judgment awarding Marvin W. Carpenter (husband) $415,000 as reimbursement for his separate property contribution in the purchase of a house. The trial court found that husband, in executing a premarital agreement, did not waive his right of reimbursement under Family Code section 2640, subdivision (b).[1] Pursuant to the premarital agreement, the trial court awarded wife $2,083 a month spousal support for five years but declined to rule on whether support was modifiable. We affirm.

*Facts*

Husband is 68 years old. Wife is 59 years old. She owns a bookkeeping service and was husband's bookkeeper before they married. On November 10, 1997, they entered into a premarital agreement providing that their separate property would remain separate property. The agreement stated that husband was buying a house in Arroyo Grande and that, upon marriage, the house would be "deemed to be their community property."[2]

Husband paid $415,000 for the house. Escrow closed on the parties' wedding day, November 20, 1997. A few days after the wedding, husband

---

[1] All statutory references are to the Family Code unless otherwise stated.

[2] Paragraph 3 of the premarital agreement states: "<u>Residence to Be Community Property</u>. Husband is in escrow to acquire, with his separate property funds, a residence consisting of certain real property located at 125 Moore Lane, in the City of Arroyo Grande, County of San Luis Obispo, California . . . to which title is initially expected to be taken in the name of Husband, as an unmarried man. The parties agree that the foregoing real property, from and after the date of their marriage, shall be deemed to be their community property. The parties further agree that all sums expended in connection with such real property, including, but not limited to, any mortgage or other loan obligations, repairs, maintenance, taxes and insurance,

executed a quitclaim deed transferring title to husband and wife as community property.

The parties separated two years later and sold the house for $650,000. The trial court awarded husband $415,000 as reimbursement for his separate property contribution. (§ 2640, subd. (b).) The balance of the sale proceeds, with offsets, was divided as community property.

*Section 2640*

Section 2640, subdivision (b) provides: "[U]nless a party has made a written waiver of the right to reimbursement of or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contribution to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division." ■ Section 2640 creates a substantive right of reimbursement that can be relinquished only by an express written waiver by the contributing spouse. (*In re Marriage of Witt* (1987) 197 Cal.App.3d 103, 108 [242 Cal.Rptr. 646] [discussing former Civ. Code, § 4800.2].) "In the absence of such a written waiver the donative intent of the contributing spouse does not bar reimbursement. . . ." (*Witt*, at p. 108.)

■ Wife argues that section 2640 does not require the magic words "I waive reimbursement." We agree, but there still must be a writing that has the effect of a waiver. Wife has not demonstrated, as a matter of law, that the premarital agreement has the effect of a waiver. She claims that the premarital agreement, the quitclaim deed, and the mortgage payments show that the house was transmuted to community property. These documents did not affect husband's right of reimbursement after the house became community property. (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 918-919 [72 Cal.Rptr.2d 856, 952 P.2d 1124]; see § 852, subd. (a) [transmutation requires express written declaration].) Nor does the commingling of separate and community property funds forfeit husband's right of reimbursement where the separate property contribution is traced to its source. (*In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1057 [104 Cal.Rptr.2d 920]; *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 822-823 [53 Cal.Rptr.2d 179].)

---

shall be made first from their community property to the extent available, but if the community property is insufficient, then one-half from the separate property of Husband and one-half from the separate property of Wife. When made, such expenditures shall thereafter be community property."

The trial court concluded that the writing requirement of section 2640 was not satisfied because the premarital agreement was silent on husband's right of reimbursement. When such an agreement is silent on such concept, it cannot have the effect of a waiver. Wife's reliance on paragraph 7, which governs property acquired after marriage, is misplaced.[3] The trial court found: "This paragraph merely states that property acquired in joint names shall be community property. It is a restatement of Family Code § 2581. It does not say anything about waiving the right to reimbursement. The right of reimbursement is not inconsistent with the characterization of property as community."

When the premarital agreement was signed, husband was unaware of his right to reimbursement. However, at that time, he knew that wife was not receiving an absolute gift of half of the value of the house. Before the wedding, the parties discussed creating a trust to provide wife a life estate if he predeceased her. Under the proposed trust, the house would be sold upon wife's death and husband's $415,000 investment would be paid to his children. Wife, however, refused to execute the trust instrument after the wedding.

Husband's articulated desire to place the house in a trust supports the trial court's finding that he did not waive his right of reimbursement.[4] ■ The waiver of a legal right requires an intentional act with knowledge of the right being waived. (*In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 469 [204 Cal.Rptr. 568, 683 P.2d 248]; *In re Marriage of Perkal* (1988) 203 Cal.App.3d 1198, 1203 [250 Cal.Rptr. 296].) "There must be '. . . an actual intention to relinquish it or conduct so inconsistent with the intent to

---

[3]Paragraph 7 of the premarital agreement states: "Property Acquired After Marriage. Notwithstanding the other provisions of this Agreement, the parties agree that they may acquire certain property jointly during their marriage. In the event that the parties acquire property in which the document of title has both of their names on it, such document of title shall control and the property shall be owned by both parties regardless of the source of funds used for the purchase. If the parties acquire personal property for which there is no document of title (e.g., furnishings, artwork, etc.), that property shall be added to the list of personal property maintained by the parties and the items designated as belonging to one or both parties."

[4]The trial court credited husband's testimony which included the following:

"Q. Was it your understanding that when Jeanne's name was put on the deed that she had a 50 percent interest in that property without any claim for reimbursement to you?

"A. [Husband] No. My understanding was that that property would go on to my children and that would be a reimbursement.

"Q. Okay. So your understanding of the reimbursement is it was going on to your children; is that correct?

"A. That they would get that property upon my death and her death.

"Q. What documents did Jeanne sign that would support that?

"A. She didn't, that was our family trust coming up."

enforce that right in question as to induce a reasonable belief that it has been relinquished.' [Citation.]" (*In re Marriage of Perkal,* at p. 1203.) The premarital agreement provides that "neither party shall have any interest in the separate property of the other, and nothing in this Agreement shall divest a party from his or her property as determined under this Agreement." The judgment is consistent with section 2460, which "encourages married persons to freely and without reservation contribute their separate property assets to benefit the community, and alleviates the need for spouses to negotiate with each other during marriage regarding continuing reimbursement rights. . . . [S]ection 2640 protects the general expectations of most people in marriage, i.e., that spouses will be reimbursed for significant monetary contributions to the community should the community dissolve." (*In re Marriage of Walrath, supra,* 17 Cal.4th at p. 919.)

Wife asserts that husband made an outright gift of a half interest in the house. But even if the quitclaim deed stated that the transfer was a gift, it would not defeat husband's right to reimbursement under section 2640. (E.g., *In re Marriage of Perkal, supra,* 203 Cal.App.3d at pp. 1203-1204 [deed transferring separate property to community as "a gift" does not waive reimbursement rights]; *In re Marriage of Witt, supra,* 197 Cal.App.3d 103, 108 [gift of separate property (farm) to community did not waive right of reimbursement]; *In re Marriage of Kahan* (1985) 174 Cal.App.3d 63, 72 [219 Cal.Rptr. 700] [waiver must be made in separate writing and cannot be made in "the same deed that created a presumption of community property"].)

### Spousal Support

 Wife was awarded $2,083 a month support for five years pursuant to the premarital agreement. She contends that the trial court should have ruled on whether support was nonmodifiable. The trial court found: "The question of whether this support can be modified in the future is not before us now and no present decision on that future question is intended. Similarly, whether this support will terminate upon the death of either party or the remarriage of [wife] pursuant to Family Code § 4337 need not be decided today." It did not err. The ripeness doctrine bars courts from issuing advisory opinions. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 998 [90 Cal.Rptr.2d 236, 987 P.2d 705].) "Wise adjudication has its own time for ripening." (*Maryland v. Baltimore Radio Show* (1949) 338 U.S. 912, 918 [70 S.Ct. 252, 255, 94 L.Ed. 562, 566].) The trial court was not required to decide support issues based on hypothetical facts or speculative future events. (*Ibid.; Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170-171 [188 Cal.Rptr. 104, 655 P.2d 306].)

The judgment is affirmed. The parties shall bear their own costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.