[No. E035434. Fourth Dist., Div. Two. Mar. 21, 2005.]

In re the Marriage of KATHI D. and JOHN R. WEAVER.
KATHI D. WEAVER, Appellant, v.
JOHN R. WEAVER, Respondent.

**COUNSEL**

Thomas V. Pratt for Appellant.

John N. Vega for Respondent.

**OPINION**

**GAUT, J.—**

### 1. Introduction

Kathi D. Weaver (wife) appeals a portion of a judgment of dissolution entered on July 16, 2003, awarding John R. Weaver (husband) reimbursement of the down payment he paid on husband and wife's residence located on Scandia Drive in Running Springs (Scandia residence). Wife also appeals the judgment finding that she was not entitled to any interest in the residence located on Thule Lane in Running Springs (Thule residence).

Wife contends that since she and husband purchased the Scandia residence as joint tenants prior to their marriage, husband is not entitled to reimbursement of the down payment, which he paid with his separate property. Wife further contends she had an ownership interest in the Thule residence as a joint tenant and therefore the trial court erred in finding she had no interest in the property.

We conclude there was substantial evidence establishing that husband and wife's original separate property interest in the Scandia residence, as joint tenants, became community property. As a consequence, the court appropriately reimbursed husband for the down payment.

As to the Thule residence, the judgment is reversed. At the time wife filed for dissolution, wife, husband, and husband's mother, Henrietta Weaver (mother) held title in the property as joint tenants. It is thus presumed under Family Code[1] section 2581 that husband and wife's interest in the property was community property. However, husband contributed his separate property interest in the Thule residence to the couple's acquisition of their community property, joint tenancy interest. Thus under section 2640 husband is entitled to reimbursement for the equity value of his separate property contribution. Husband and wife are each entitled to one-half of the value of the remaining community property interest in the Thule residence.

---

[1] Unless otherwise noted, all statutory references are to the Family Code.

## 2. Facts and Procedural Background

Husband and wife married on September 28, 1985. After 14 years of marriage, husband and wife separated on December 9, 1999. On January 19, 2000, wife petitioned for marital dissolution. The trial court entered judgment of marital dissolution on January 6, 2004.

*Scandia Residence*

In September 1985, shortly before husband and wife married, they purchased a home on Scandia Drive, in Running Springs. Husband and wife held title to the property in joint tenancy, as unmarried individuals. Husband supplied from his separate property $17,478.50 for the $10,600 down payment and additional closing costs. Husband and wife funded the remainder of the $85,000 home purchase through a mortgage ($76,189). The deed for the Scandia residence was recorded on September 26, 1985, two days before husband and wife's marriage.

In November 1986, husband and wife moved into the Scandia residence and began remodeling it. They made about $33,000 in special improvements, and obtained a second mortgage of $32,500 on the Scandia residence in August 1988. The loan was used to pay for the special improvements, which included adding a garage, bedroom, and fireplace.

When husband and wife refinanced their home in November 1992, they borrowed $124,000 against their home. The mortgage at the time of the dissolution trial was $170,750. Husband and wife resided at the Scandia residence until they separated.

At the time of husband and wife's marriage, they were both employed at General Dynamics. Wife continued working there for about a year, until 1987, and then quit. In 1997, she worked for a short time at Wal-Mart. Wife gave husband her paychecks and husband handled all the finances. Husband continued working at General Dynamics during the marriage for about three and a half years, until he retired in March 1989.

Following a trial on the division of property, the trial court awarded husband a credit for the $10,600 down payment on the Scandia residence as a section 2640 reimbursement. The trial court stated in its written findings and orders the following: "The court finds this to be community property and awards it to husband, subject to the encumbrance thereon. The court finds the gross value of the property to be $215,000 with a balance owing of $107,770. However, husband is entitled to 2640 reimbursement for his separate property down payment in the amount of $10,600 which is calculated by taking the

purchase price of $85,000 and subtracting the amount of the loan of $73,400. (Exhibit A) He is not entitled to credit for payment of closing costs. The court declines to use wife's analysis. As such, the net community interest is found to be $96,630. [¶] The evidence is insufficient to trace the $37,000 in improvements to husband's separate property rather than the monies received from the refinance. As such, his request for reimbursement is denied."

*Thule Residence*

Husband and wife testified at trial that, at the time wife filed for divorce on January 19, 2000, husband, wife, and mother held title in mother's home, the Thule residence, as joint tenants.

Mother and her husband (father) purchased the Thule residence in 1989, using their earnings and proceeds from the sale of their desert home in 1989. Title was held by mother, father and husband as joint tenants. Wife waived any interest in the home. Husband and wife did not contribute anything to the purchase of the home. After father died in 1997, mother changed title on her Thule home and moved in with husband and wife at the Scandia residence. Wife was included as a joint tenant along with mother and husband.

Mother testified at trial that, because she did not trust wife, she did not want her on title to the Thule residence and was unaware that wife was on the title. Mother claimed she never intended that wife be on the title.

Wife testified that, after father's death, mother had told her she intended to give husband and wife her property. Wife believes that she, husband, and mother own the Thule residence as joint tenants.

Husband acknowledged that wife's name was on the title to the Thule residence as a joint tenant. Husband testified that when father died, mother had a real estate agent prepare a quitclaim deed. Mother said she did not want wife's name on the Thule title. Nevertheless, the deed named mother, husband, and wife as joint tenants. Husband claimed he signed the deed without reading it and did not notice wife was named as a joint tenant. He claims it was a mistake. At trial, he conceded wife held joint tenancy title: "We don't contest that at all." The deed was recorded in 1997.

Husband acknowledged he attempted to change wife's interest in the Thule residence in 2001 or 2002, after wife had filed for divorce in January 2000, but before he was served with the divorce papers. Husband went to a real estate attorney, who changed title of the Thule residence to mother and husband, as joint tenants, and wife as a one-third owner. This change

prevented wife from acquiring a half interest in the property as a joint tenant in the event mother died. Both husband and mother signed the deed.

Following the trial, the court took the matter under submission and found that wife had no interest in the Thule residence. The court stated in its written findings and orders: "The court finds that this residence is the property of husband and/or his mother and there is no community interest. Although there is a presumption that the title controls, wife concedes that no community monies were ever invested in this house and there is no evidence from any of the witnesses that husband's mother gifted this property to both her son and his wife. (See *In re Marriage of Camire* (1980) 105 Cal.App.3d 859, 865 [164 Cal.Rptr. 667].)"

### 3. Wife's Interest in the Thule Residence

Wife contends the trial court erred in assigning husband her one-third ownership interest in the Thule property. She also claims husband violated the restraining order, which prohibited husband from executing the deed severing the joint tenancy and changing wife's interest to tenancy in common ownership.

With regard to the latter contention, the record is insufficient to address this complaint. The record does not contain the alleged deed changing wife's title to a one-third tenancy in common interest, and the evidence indicates wife never consented to such a change. The record is also insufficient to determine whether the deed was executed prior to service of the marital dissolution petition, summons, and temporary restraining order enjoining transfer of any interest in real property. There being insufficient evidence that the alleged deed changing wife's joint tenancy interest to tenancy in common was valid and enforceable, we conclude husband did not sufficiently establish such a change in title. We thus begin with the premise that at the time of trial, husband, wife, and mother held title to the Thule residence in joint tenancy.

■ Generally, property acquired during marriage by either spouse, other than by gift or inheritance, is community property. (§ 760; *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 289–290 [39 Cal.Rptr.2d 673].) This is a rebuttable presumption affecting the burden of proof; hence it can be overcome by the party contesting community property status. (*Haines, supra,* 33 Cal.App.4th at p. 290.) ■ Property owned by either spouse before marriage, or acquired by gift or inheritance during marriage, is that spouse's separate property. (§ 770.)

In the instant case, husband received a joint tenancy interest in his parents' home, as a gift, which constituted separate property. Wife waived any interest

in the property. After father died, husband and mother held joint tenancy title to the property until title was changed to reflect father's death. Title was changed to include wife as a joint tenant.

■ Under section 2581, all property held in joint title by spouses during marriage is presumed to be community property upon dissolution, rebuttable only by written evidence to the contrary. (§ 2581, *In re Marriage of Perkal* (1988) 203 Cal.App.3d 1198, 1201 [250 Cal.Rptr. 296].) Such evidence must consist of either "[a] clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property, [¶] . . . [or by p]roof that the parties have made a written agreement that the property is separate property." (§ 2581.) Thus, under section 2581 spouses cannot hold property in joint title while preserving the property's separate property characterization through oral or implied agreements.

■ But even if property held in joint tenancy loses its separate property characterization under section 2581, section 2640 provides a right to reimbursement upon dissolution for the spouse who contributed separate property to the acquisition of property held in joint title, absent a written waiver of the right to reimbursement. We note sections 2581 and 2640 were formerly codified as Civil Code sections 4800.1 and 4800.2 respectively but remain for all relevant purposes the same in content as the former statutes. Civil Code former sections 4800.1 and 4800.2 were enacted in 1983 and took effect in January 1984.

In determining whether the trial court erred in finding wife had no interest in the Thule residence, we begin by determining the character of the Thule residence property, that is, whether it is community or separate property. The evidence is undisputed title was changed from joint tenancy held by mother and husband to joint tenancy held by husband, wife, and mother.

The confusion arises here as a consequence of mother arranging to change the title to reflect her husband's death in 1997. In the process of doing so, wife was added as a joint tenant, along with husband and mother. Mother and husband claimed at trial they did not intend to add wife to the title. Mother testified she was unaware wife was added as a joint tenant and husband claimed it was an oversight; a mistake. He testified that although he and mother signed the deed, they did not realize wife was added to the title.

Under section 2581, joint tenancy title held by husband and wife in the Thule residence is presumed to be community property upon dissolution. (§ 2581.) This presumption is rebuttable only by written evidence to the contrary. (§§ 852, 2581.) Here, there is no written evidence refuting this

presumption. The trial court's reliance on *In re Marriage of Camire* (1980) 105 Cal.App.3d 859 [164 Cal.Rptr. 667], in finding wife had no community property interest is misplaced since *Camire* predates enactment of section 4800.1 (later § 2581), which provides that the community property presumption can be rebutted only by written agreement or statement. Prior to section 4800.1, the community property presumption could be rebutted by an oral agreement. In *Camire*, husband's joint tenancy title held by the husband was voided by testimony that the wife's brother orally agreed to transfer title solely to the wife. Under section 2581, such evidence would not rebut the community property presumption.

Here, since wife acquired joint tenancy title to the Thule residence during the marriage, under section 2581 it is presumed husband and wife's joint tenancy interest in the property is community property, and this presumption was not rebutted by a writing preserving husband's separate property interest in the Thule residence in the event of marital dissolution. As a consequence, at the time of dissolution, husband and wife held a two-thirds community property, joint tenancy interest in the Thule residence. The trial court erred in finding wife had no community property interest in the property.

█ But under section 2640, husband is entitled to reimbursement for his separate property contribution to husband and wife's joint tenancy interest in the Thule residence. Generally, a spouse who converts his or her own separate property to community property is entitled to reimbursement for the separate property contribution in the event of marital dissolution, unless the right is waived in writing. The Law Revision Commission comment to section 2640 explains: "Under Section 2640, in case of dissolution of the marriage, a party making a separate property contribution to the acquisition of the property is not presumed to have made a gift unless it is shown that the parties agreed in writing that it was a gift, but is entitled to reimbursement for the separate property contribution at dissolution of marriage. The separate property contribution is measured by the value of the contribution at the time the contribution is made. Under this rule, if the property has since appreciated in value, the community is entitled to the appreciation. If the property has since depreciated in value, reimbursement may not exceed the value of the property . . . ." (Cal. Law Revision Com. com., reprinted at 29D West's Ann. Fam. Code (2004 ed.) foll. § 2640, p. 590.)

In *In re Marriage of Anderson* (1984) 154 Cal.App.3d 572 [201 Cal.Rptr. 498], and *In re Marriage of Neal* (1984) 153 Cal.App.3d 117 [200 Cal.Rptr. 341], the court awarded reimbursement for a spouse's separate property interest in real property in which title was changed during the marriage to joint tenancy. In *Anderson*, the trial court determined that a home the husband

had purchased before marriage was community property as a result of the husband deeding the property to his wife and him as joint tenants in order to obtain a home equity loan.

The *Anderson* court concluded the husband was entitled to reimbursement under Civil Code former section 4800.2 for his separate property and remanded the matter to the trial court with instructions to determine the value of the husband's separate property contributions under Civil Code section 4800.2 (now Fam. Code, § 2640). The *Anderson* court noted that Civil Code section 4800.2 seeks to avoid the inequity which often required the equal division of property taken in joint tenancy form despite a showing that one spouse had contributed a substantial portion of his or her separate property.

In *Anderson*, the wife argued that the grant deed itself constituted a written waiver of reimbursement rights under Civil Code former section 4800.2 when a spouse transmutes his or her separate property into community property. The wife asserted that an award of reimbursement under these circumstances would render the grant deed illusory and violate a spouse's right to enter into an engagement or transaction with another.

The *Anderson* court rejected this argument, explaining that there was no finding that the husband transmuted his home into community property, and the wife erroneously assumed her husband had given his separate property to the community as a gift. The court stated: "There is no evidence here that [husband] intended to give [wife] a one-half share of the Hayward home, and under section 4800.2, we may not presume such an intention." (*Anderson, supra,* 154 Cal.App.3d at p. 580.)

The *Anderson* court also rejected the wife's contention that the husband's conveyance of his Hayward home was not a separate property contribution under Civil Code former section 4800.2 because that section exclusively defined a " 'contribution to the acquisition of the property' " to " 'include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property . . . .' " The court explained that "[t]he term 'includes' is 'ordinarily a word of enlargement and not of limitation. [Citation.] The statutory definition of a thing as "including" certain things does not necessarily place thereon a meaning limited to the inclusions.' [Citations.] We are therefore not limited to the forms of contributions enumerated in the new section." (*Anderson, supra,* 154 Cal.App.3d at pp. 580–581.)

The *Anderson* court further explained that "section 4800.2 seeks to avoid the inequity incurred under the rule of *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285], which often required the equal

division of property taken in joint tenancy form despite a showing that one spouse had contributed a substantial portion of his or her separate property. (See Assem. Com. Staff Rep. on Judiciary on Assem. Bill 26, [(May 9, 1983), as amended Apr. 4, 1983] p. 4; Marital Property Rep., at p. 6.) Here, there is a sufficient showing that appellant made a substantial contribution to the community when he unwittingly executed a joint tenancy deed to a home that had been in his family for the last 25 years, at the insistence of a loan officer as a last minute requirement for a home equity loan. These facts clearly present a situation in which the Legislature sought to provide relief through the enactment of section 4800.2." (*Anderson, supra,* 154 Cal.App.3d at p. 581.) As a consequence, the *Anderson* court concluded the husband's home became presumptively community property but the husband was entitled to reimbursement for his separate property contributions under Civil Code former section 4800.2 (now Fam. Code, § 2640). (*Anderson, supra,* at p. 581.)

The court in *Neal, supra,* 153 Cal.App.3d at page 121, also awarded reimbursement under section 2640 for the wife's separate property interest in a house that was placed in joint tenancy when she and her husband attempted to obtain a loan. The *Neal* court held that under Civil Code former section 4800.1 (§ 2581) the wife's separate property was converted into community property but the wife was entitled to reimbursement for the equity value of her separate property interest at the time it was placed in joint tenancy. (*Neal, supra,* at p. 121.)

The California Supreme Court has disapproved of *Anderson* and *Neal* on the grounds the court erroneously applied Civil Code former sections 4800.1 and 4800.2 retroactively (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 763, fn. 10 [218 Cal.Rptr. 31, 705 P.2d 354]; *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 451, fn. 13 [224 Cal.Rptr. 333, 715 P.2d 253]). However, there has been no criticism as to *Anderson* and *Neal's* construction of Civil Code former section 4800.2 as allowing reimbursement for real property contributions to community property.

In the subsequent cases of *In re Marriage of Witt* (1987) 197 Cal.App.3d 103 [242 Cal.Rptr. 646] and *In re Marriage of Perkal, supra,* 203 Cal.App.3d 1198, in which the transfer of property from separate property to joint tenancy occurred after enactment of Civil Code former sections 4800.1 and 4800.2, the court reached the same conclusion; that the spouse contributing separate property was entitled at dissolution to reimbursement under Civil Code former section 4800.2 (now Fam. Code, § 2640) to the equity value of the real property converted to joint tenancy.

In *Witt*, the wife transferred her separate property title to a dairy farm to her and her husband, as joint tenants. At the time of marital dissolution, she

received reimbursement for the equity value of her separate property interest in the dairy farm at the time it was converted to joint tenancy. Since the value of the farm was less at the time of dissolution than at the time of transfer of title to joint tenancy, the court awarded the wife the entire farm.

Likewise, in *In re Marriage of Perkal, supra,* 203 Cal.App.3d 1198, the court held that, although the husband's separate property interest in his home was presumed under Civil Code former section 4800.1 to have changed to community property upon changing title to joint tenancy during his marriage, the husband nevertheless retained his right to reimbursement of his separate property interest in the home under Civil Code former section 4800.2. The *Perkal* court concluded transfer of title itself was insufficient to constitute a waiver of his separate property interest and there was no written evidence of the husband's intent to relinquish his right to reimbursement, as is required under section 2640.

The *Perkal* court noted that the "legislative history to Civil Code section 4800.2 makes clear the section [2640] applies to situations . . . when a spouse conveys to the married couple title in joint tenancy to property acquired by the spouse prior to the marriage." (*Perkal, supra,* 203 Cal.App.3d at p. 1202.) This applies equally here to separate property husband acquired by gift during the marriage.

Wife argues that under *Haines* the trial court erred in giving husband her joint tenancy interest in the Thule residence. In *Haines*, the court reversed the trial court ruling awarding the husband reimbursement for his separate property contribution to acquisition of the couple's residence. The *Haines* court concluded the Evidence Code section 662 common law presumption in favor of title must yield to the Civil Code section 5103 (now section 721, subdivision (b)) presumption of undue influence when a spouse acts against the interests of the other spouse during marriage.

In *Haines*, the marital undue influence presumption arose as a consequence of the husband coercing his wife into executing a quitclaim deed conveying her interest in their residence to the husband as his sole separate property. Later, he deeded the property back to the wife and himself as joint tenants but at the time of marital dissolution he claimed he was entitled to reimbursement for his separate property interest in the residence, which he converted to joint tenancy. The *Haines* court concluded the husband was not entitled to reimbursement under Civil Code former section 4800.2 because his separate property interest was acquired through coercion and the undue influence presumption applied. Here, the undue influence presumption is inapplicable. This case simply involves husband converting his separate property interest in the Thule residence to joint tenancy shared with wife, as well as mother.

A deed, which changes title to joint tenancy during a marriage, in our view, sufficiently conveys in writing the intent of the donor to waive his separate property interest and transmute the separate property interest to community property. Allowing reimbursement under such circumstances renders the section 2581 community property presumption meaningless since the effect of allowing reimbursement under section 2640 is to negate the transfer of title to joint tenancy and the section 2581 community property presumption. The joint tenancy deed, in effect, becomes illusory in the event of marital dissolution.

Nevertheless, unless our high court rules that section 2640 does not allow reimbursement for real property, we shall follow the current trend in construing section 2640 broadly to allow reimbursement for real property contributions, unless there is a written statement, apart from a joint tenancy deed, which specifically waives the right to reimbursement.

Although husband is entitled to reimbursement of his separate property contribution to the couple's joint tenancy interest in the Thule residence, he is not entitled to the couple's entire two-thirds interest. Husband and mother initially each held a one-half interest in the Thule residence after father died. When they transferred titled to wife, husband, and mother, as joint tenants, husband and mother each lost a one-sixth interest by adding wife as a joint tenant, thereby reducing their joint tenancy share to one-third from a one-half share. Under section 2581, the couple's two-thirds interest became community property.

Accordingly, the trial court on remand is instructed to determine the value of the husband's one-half separate property interest in the Thule residence at the time wife was added as a joint tenant and reimburse husband for that separate property contribution to the couple's acquisition of their two-thirds joint tenancy interest in the property. Any increase in the equity value of the separate property contribution thereafter is community property and shall be divided equally between husband and wife.

The additional one-sixth joint tenancy interest mother contributed to the couple's two-thirds joint tenancy interest is community property under section 2581 as well and shall also be divided equally among husband and wife.

### 4.   Reimbursement of the Scandia Residence Down Payment

■   Wife argues that husband was not entitled to reimbursement for paying the $10,600 down payment because, at the time of purchase of the Scandia residence, husband and wife's title was separate property since the

purchase occurred before their marriage. But there was a transmutation of the Scandia property to community property as a consequence of commingling the parties' separate property interest with community property used to pay the mortgage and home improvements during the marriage. And section 852, subdivision (a), which provides that a transmutation of property is not valid unless made in writing by an express declaration, is inapplicable due to the commingling of separate and community property. (§ 852, subd. (d).)

The instant case is factually similar to *In re Marriage of Rico* (1992) 10 Cal.App.4th 706 [12 Cal.Rptr.2d 659], in which the husband and wife purchased a home as tenants in common about a year before their marriage. Unlike in the instant case, both parties contributed separate property funds to the purchase of the home. But as in the instant case, during the marriage, the parties contributed community property funds to pay the mortgage and refinanced their home. The trial court concluded the property converted to community property at the time of the refinance, when the parties changed title to joint tenancy in 1986, raising a presumption of community property. (§ 2581.)

The *Rico* court explained that, "Although the tenancy in common raised a presumption of equal ownership [citation], the court was authorized to order an equitable compensatory adjustment to compensate the parties for their respective use of separate funds to purchase and improve the residence. . . . Thus, the court properly awarded unequal separate property interests in the residence. And because the residence was converted into joint tenancy during the marriage, raising a presumption of community property (Civ. Code, § 4800.1 [now Fam. Code, § 2581]), the provisions of Civil Code section 4800.2 [now Family Code section 2640] for reimbursement of the separate property contributions were applicable." (*Rico, supra,* 10 Cal.App.4th at p. 710.)

While *Rico* provides authority for reimbursing husband for the down payment, the equitable formula used in *Rico* to calculate the amount of reimbursement has been superseded by enactment of Civil Code section 4800.4, subdivision (a), recodified as Family Code section 2650. That provision allows the court, at the time of dissolution, to divide property owned by the parties prior to marriage "in accordance with the same procedure for and limitations on, division of community estate." (Fam. Code, § 2650.)

In the instant case, husband was thus entitled to reimbursement for the down payment paid from his separate property.

## 5. Disposition

The judgment is reversed solely to the Thule residence and the matter is remanded to the trial court with instructions to (1) determine the equity value of husband's one-half interest in the Thule residence at the time wife was added to the title, and reimburse husband for that value; (2) determine if there has been any increase in equity of the one-half interest since wife was added to the title and award each spouse one-half of that increase in equity, if any; and (3) award each spouse one-half of the equity value of the one-sixth joint tenancy interest mother contributed to the couple's ownership interest in the Thule residence. The judgment is affirmed in all other regards.

The parties are to bear their own costs on appeal.

Ramirez, P. J., and Hollenhorst, J., concurred.